IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

EL DORADO DIVISION

| | |
|---|---|
| Webster Business Credit Corp., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Bradley Lumber Company, ) <br> Bradley Specialties LLC, ) <br> Bradley Specialties Division ) <br> (an unincorporated company), ) <br> Bradley Lumber Company Outlet Store LLC, and ) <br> F. David Chambers, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> ) <br> Arkansas Development Finance Authority, ) <br> ) <br> Plaintiff-Intervenor, ) <br> ) <br> Webster Business Credit Corp., ) <br> ) <br> Defendant-Intervenee. ) <br> ) <br> ) <br> ) | Case No. 1:08-CV-01083-HFB |

**<u>ORDER</u>**

**PARTIES:**

       Webster Business Credit Corp. ("Webster")
       Bradley Lumber Company ("Bradley Lumber")
       Bradley Specialties LLC ("Bradley LLC")
       Bradley Specialties Division ("Bradley Specialties")
       Bradley Lumber Company Outlet Store LLC ("Bradley Outlet")
       F. David Chambers (collectively, the "Bradley Defendants")
       Arkansas Development Finance Authority ("ADFA")
       Non-party Bradley Brand Furniture, LLC ("Bradley Brand")

**FINDINGS OF FACT:**

1. On or about October 30, 2006, Bradley Lumber and Webster entered into a credit agreement (the "Credit Agreement") pursuant to which Webster agreed to provide Bradley Lumber working capital and additional financing needs on a going-forward and revolving basis up to six million dollars ($6,000,000).

2. Chambers executed and delivered to Webster an absolute and unconditional guaranty agreement (hereinafter the ''Guaranty''), whereby Chambers unconditionally guaranteed all obligations of Bradley Lumber to Webster.

3. To secure the loans made by Webster to Bradley Lumber, Bradley Lumber granted Webster a blanket security interest and lien in all of Bradley Lumber's personal property subject to the liens of ADFA in the FFE as defined herein (the "Collateral"), thereby granting to Webster a security interest in and lien on all inventory and receivables of Bradley Lumber in addition to other personal property, all as more fully described in Section 4 of the Credit Agreement. Webster properly perfected its security interest in the Collateral by filing a UCC-1 financing statement with the Arkansas Secretary of State's office.

4. Bradley Lumber, a hardwood mill, is alleged to have defaulted under the Credit Agreement, thereby triggering Webster's rights under the Credit Agreement.

5. Bradley Lumber and Chambers admitted in their answer that the amount due under the Webster loan was $2,888,307.72, as of September 22, 2008 and exclusive of additional interest, fees, and other expenses. No material payments have been received by Webster since September 22, 2008. While Bradley Lumber has not contested the amounts due, or that the indebtedness was accelerated by the terms of the Credit Agreement, Bradley Lumber and the other defendants have asserted counterclaims against Webster and various defenses.

6. A failure to pay Webster triggers numerous provisions under the Credit Agreement, including, but not limited to, Section 12.1 providing Webster the right to exercise any and all rights and remedies provided in the Credit Agreement, the Uniform Commercial Code, and applicable law. Section 12.1 also sets forth Webster's right to take possession of the Collateral, to foreclose on the Collateral, and to sell any or all of the Collateral. Webster has the right to enter Bradley Lumber's premises or other premises to accomplish the possession and liquidation of the Collateral. Finally, Webster has the right to demand Bradley Lumber to turnover the Collateral and to make the Collateral available to Webster at its discretion.

7. Webster also is permitted under Section 4.10 of the Credit Agreement, to have "full access to and the right to audit, check, inspect and make abstracts and copies from each Borrower's books and records, audits, correspondence and all other papers relating to the Collateral and the operation of each Borrower's business from time to time in Lender's Permitted Discretion." Webster, under this same section, is permitted to enter upon Bradley Lumber's business premises and any other locations at which the Collateral may be located to inspect the Collateral and any and all records pertaining thereto.

8. The Credit Agreement sets forth additional rights and remedies.

9. Webster has provided inventory reporting showing a $2.8 million shortfall in inventory, which leaves Webster in a potentially unsecured position. Moreover, Webster's field examiners found over 3.3 million board feet of pine lumber that Bradley Lumber claims is not theirs. Some of this pine lumber was found in a warehouse adjacent to the mill and had paper cards stapled to the pallets of lumber with the names "Bradley Specialties" (a Bradley Lumber affiliate formed in August 2008) (485,500 board feet) and "Wood Lumber Company" (2.925 million board feet).

10. ADFA has a security interest and lien on Bradley Lumber's furnishing, fixtures, and equipment together with all computer records, software, books and records pertaining to said collateral, and the proceeds derived therefrom ("FFE") and mortgages and liens on Bradley Lumber's real property located in Bradley County, Arkansas and assignments of rents and leases associated therewith ("Real Property Interests"), which security interests, mortgages, and liens do not attach to any of the company's inventory or accounts receivable. The parties hereto stipulated that the pending motion for an Order of Replevin excludes Bradley Lumber's FFE.

11. Webster, by written motion, now seeks:

(a) a preliminary injunction enjoining Defendants and all those acting for, with, or on behalf of Defendants from dissipating, using, transferring, selling, moving, or otherwise interfering with (a) the Collateral (as defined in Section 4 and elsewhere in the Credit Agreement), (b) the property identified by Bradley Lumber in the inventory reports and physical inventory counts annexed hereto as Exhibit A, (c) all the pine lumber in the custody, control, or possession of any Defendant or that is located at, on, adjacent to, or within any of Defendants' facilities, and (d) all proceeds thereof (referred to herein as the "Collateral");

(b) an Order of Receivership, pursuant to Section 12.5 of the Credit Agreement, authorizing the appointment of a receiver, at Webster's sole election and discretion, to take possession of and operate and/or dispose of the business and assets of Bradley Lumber and the Collateral, and for any costs and expenses incurred as a result thereof to be included within the obligations of Defendants as alleged herein; and

(c) an Order of Delivery, requiring Defendants to turnover possession, custody, and control of all the Collateral.

12. Defendants consented to an Order of Delivery for the Collateral and to a preliminary injunction over Bradley Lumber's assets. Defendants also consented to having the Court appoint a master to investigate certain facts and issues. The appointment of the master is discussed below. Defendants opposed the balance of the relief requested. ADFA has neither opposed nor supported the relief requested by Webster so long as the relief excludes the FFE and the Real Property Interests.

**CONCLUSIONS OF LAW**

13.     The Court finds that Webster has demonstrated an entitlement to provisional relief in the form of a preliminary injunction and Order of Delivery, and to justify appointing a master.

14.     **Preliminary Injunction**

15.     Webster satisfies Rule 65(b) of the Federal Rules of Civil Procedure and the standard set forth by the Eighth Circuit in *Dataphase Sys., Inc. v. C. L. Sys., Inc*., 640 F.2d 109 (8th Cir. 1981) (en banc).  Webster has satisfied its burden of establishing a right to injunctive relief.  Moreover, Bradley Lumber and the guarantors contractually agreed in Section 16.10 of the Credit Agreement that "in the event any Borrower fails to perform, observe or discharge any of its obligations or liabilities under this Agreement, any remedy at law may provide inadequate relief to Lender and, therefore, Lender, if Lender so requests, shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving that actual damages are not an adequate remedy."

16.     The Court issues a preliminary injunction enjoining Defendants, all those acting for, with, or on behalf of Defendants (including Bradley Brand), and all those receiving notice hereof (except ADFA as to the FFE or ADFA's Real Property Interests) from dissipating, using, transferring, selling, moving, or otherwise interfering with (a) the Collateral (as defined in Section 4 and elsewhere in the Credit Agreement) (b) the property identified by Bradley Lumber in the inventory reports and physical inventory counts annexed to Webster's motion as Exhibit A, (c) all the lumber in the custody, control, or possession of any of the Defendants that is located at, on, adjacent to, or within any of the Defendants' facilities, and (d) all proceeds thereof (referred to herein as the "Restrained Collateral").  Property as referred to herein shall include, but not necessarily be limited to the following addresses:  503 South Martin Street, Warren, Arkansas, 822 Fullerton Street, Warren, Arkansas, and 501 Pennington Road, Warren, Arkansas.

17.     Notwithstanding the aforementioned injunction, Bradley LLC, Bradley Specialties, and Bradley Brand shall be permitted to (a) pay reasonable and customary business expenses provided they provide the parties with a schedule of all such business expenses in advance and no written, reasonable objections are made by Webster or ADFA within five (5) business days of receipt, (b) make "arms-length" sales in the ordinary course of business provided a report is provided each month as to the sales activity, the terms of the sales, and any receipts from said sales, and (c) pay its counsel of record to prosecute and defend this action. Only expenses critical to the business may be paid pending the production of the initial expense schedule discussed above and the passing of the first objection period provided that no single expense exceeds $5,000 and that all expense payments and the details thereof are promptly disclosed to all parties. Pending an objection to a particular expense, the payment shall be enjoined and the restrained party shall submit the matter to the Court for resolution by letter application. The objecting party shall respond to the letter application within 48 hours of receipt to ensure a prompt resolution of any such objections. These letters shall not exceed two pages in length. All receipts by Defendants and Bradley Brand fall within this injunction, except for any payments to Webster or for Webster's benefit shall be permitted.

18.     **Order of Delivery**

19.     The procedure for replevin in Arkansas is statutory. It is called an "order of delivery." Ark. Code Ann. § 18-60-801. The request for replevin in Arkansas is done by a "Complaint and Petition for Replevin." *See id.* § 18-60-804. The record supports the issuance of an Order of Delivery.

20.     Webster has demonstrated the right to enter Bradley Lumber's premises to search for and secure control over the Replevin Property. Defendants have disputed ownership over

certain categories of the Collateral. Therefore, Bradley Lumber and Webster shall prepare an inventory of the lumber inventory agreed to fall within the definition of Collateral (the "Undisputed Lumber Inventory"). The Court issues to Webster an Order of Delivery with respect to the Undisputed Lumber Inventory as well as all other categories of the Collateral (except for the FFE and Real Property Interests) (the "Replevin Property"). The lumber and/or log inventory that falls into the undisputed category is dealt with in the following section.

21. Defendants and Bradley Brand shall cooperate with Webster and deliver the Replevin Property to Webster immediately but not later than ten (10) business days from this Order. Moreover, Webster is authorized and entitled to enter and use Bradley Lumber's premises located at 822 Fullerton Street in Warren, Arkansas to store the Replevin Property subject to the rights of ADFA resulting from the Real Property Interests and to liquidate the Replevin Property as per the Credit Agreement and applicable law.

22. Defendants, the Restrained Parties, and all those acting on their behalf or in concert with them, are enjoined from interfering with the liquidation in any way or manner. If any non-party objects to the delivery of any portion of the Replevin Property, or the liquidation thereof, by claiming that (a) it has an interest in the subject property senior to that held by Webster or (b) the property is not covered by Webster's security interest and lien, the objecting party shall first contact the parties in an attempt to resolve the matter in good faith and file an application to this Court if necessary if it appears that a resolution is unattainable.

23. **<u>Appointment of a Master</u>**

24. Webster sought the entry of an Order of Receivership, pursuant to Section 12.5 of the Credit Agreement, authorizing the appointment of a receiver, at Webster's election and discretion, to take possession of and operate and/or dispose of the business and assets of Bradley

Lumber and the Collateral, and for any costs and expenses incurred as a result thereof to be included within the obligations of Defendants as alleged herein.

25. The Court appoints a master to investigate (a) the whereabouts and disposition of the missing pine and log inventory as alleged by Webster, (b) the legitimacy of Bradley LLC and Bradley Brand, (c) whether Bradley Outlet, Bradley Specialties, Bradley LLC, or Bradley Brand utilized Bradley Lumber lumber inventory without paying Bradley Lumber, (d) whether the Defendants and Bradley Brand conducted business with each other on arms-length terms, governed themselves in a separate and distinct manner, and maintained corporate formalities (*e.g.,* separate bank accounts, segregated funds, conducted and recorded board of directors and shareholder meetings, etc.), (e) any fraudulent transfers or conveyances by Bradley Lumber, (f) the ownership of any Bradley Lumber log or lumber inventory which Webster and Bradley Lumber dispute ownership, (g) any insider and inter-company transactions, and (h) the circumstances concerning the invoice to Brissa Corporation.

26. The master shall be selected by Defendants and Webster, and shall be someone certified in public accounting with training or qualifications in forensic accounting and/or fraud examinations. Webster shall submit to Defendants three (3) qualified names of persons within a hundred (100) mile radius of Bradley County who are available to serve as master, along with a summary of each person's qualifications and fees. Defendants shall choose a master from the list of the names submitted by Webster, within two (2) business days of receipt. If the parties are unable to agree on a master by this method, the Court will select a master.

27. The master's scope of work shall be limited to the items set forth above. No party shall be permitted to limit or to expand the master's scope of work absent further order of this Court. The master shall submit monthly invoices based on his reasonable services billed at

prevailing rates to counsel for Webster and the Defendants, and the invoices shall be paid by Webster on a monthly basis absent any written objections circulated to the parties and the master within five (5) business days following receipt. Any disputes as to invoices are to be submitted to the Court for resolution. Any amounts paid by Webster to the master shall be added to the indebtedness owed by Bradley Lumber to Webster, and, thus, charged into the Bradley Lumber loan balance under the terms of the Credit Agreement.

28. Defendants and Bradley Brand shall cooperate and provide the master with access to any and all books and records of their companies and all related companies. The Court intends for each party to have access to the information requested by and provided to the master. Accordingly, any party is entitled to the documents and information provided to the master, provided that any costs associated with communicating with the master, reviewing the materials, and/or copying the materials are to be borne by the requesting party, not Webster.

29. The master shall report to the Court and the parties within 30 days of this Order as to his/her progress, and shall complete his/her examination and submit a final report within 90 days of this Order to the parties and the Court. The parties shall have the right to object to and/or contest any portion of the final report. A conference to discuss the logistics thereof will be scheduled following the submission of the final report.

30. **Miscellaneous**

31. Webster is directed to file with the Court as soon as possible a bond or undertaking in the amount of ten thousand dollars ($10,000).

IT IS SO ORDERED, this 18th day of December, 2008.

/s/ Harry F. Barnes  
Hon. Harry F. Barnes  
Unites States District Judge