IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

WEBSTER BUSINESS CREDIT
CORPORATION                                                          PLAINTIFF

vs.                              Case No. 1:08-cv-01083

BRADLEY LUMBER COMPANY, *et al.*                          DEFENDANTS

ARKANSAS DEVELOPMENT FINANCE
AUTHORITY                                        INTERVENOR PLAINTIFF

vs.

WEBSTER BUSINESS CREDIT
CORPORATION, *et al.*                            INTERVENOR DEFENDANTS

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

On October 25, 2010, Plaintiff, Webster Business Credit Corporation, filed a Motion to Dismiss Amended Counterclaims and Defenses.  ECF No. 210.[1]  Defendants responded on November 24, 2010.  ECF No. 215.  A hearing was held on this Motion on January 31, 2011.  This motion was referred to this Court by the Honorable Harry F. Barnes pursuant to 28 U.S.C. § 636(b)(1) for the purpose of making a report and recommendation.  In accordance with that referral, this Court enters the following report and recommendation.

**1.  Background**:

Plaintiff, Webster Business Credit Corporation ("Webster") commenced this action against Defendants, Bradley Lumber ("Bradley Lumber") and Bradley Lumber's various affiliates and

---

[1] The docket numbers for this case are referenced by the designation "ECF. No."

guarantors, including its owner and President Dr. F. David Chambers ("Chambers").  In this action, Webster seeks to recover approximately $3 million they allege is owed by Bradley Lumber and Chambers under a Credit Agreement.

With this Motion, Webster seeks a dismissal of the counterclaims and defenses in Defendants Amended Counterclaim.  ECF No. 210.

## 2. Applicable Law:

The Plaintiff contends that the Defendant's counterclaims are deficient pursuant to the Supreme Court's rulings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*,___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)(quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 129 S. Ct. at 1949).  The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or reasonable inference, that the "defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

However, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal,* 129 S.Ct. at 1949,

(quoting *Twombly*, 550 U.S. at 570).  A pleading that merely pleads "labels and conclusions," or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of factual enhancement will not suffice. *Id.*   Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.  "When considering a motion to dismiss, we take the complaint's material allegations as true and liberally construe the complaint in the plaintiff's favor." *Little Gem Life Sciences, LLC v. Orphan Medical, Inc.*, 537 F.3d 913, 917 (8th Cir. 2008) quoting *Davenport v. Farmers Ins. Group*, 378 F.3d 839, 842 (8th Cir.2004).  Further, in considering a motion to dismiss, the facts are presented in the light most favorable to the nonmoving party.  *See Davenport*, 378 F.3d at 841.

**3. Discussion:**

In the Amended Counterclaim, Defendants plead causes of action based on (1) breach of contract; (2) violation of the Arkansas Deceptive Trade Practices Act; (3) fraud in the inducement; (4) conversion;  (5) promissory estoppel; and (6) commercial unreasonableness.  ECF No. 141. Defendants also plead for punitive damages.   To evaluate a motion to dismiss for failure to state a claim the Court must look to the factual allegations of the complaint, or in this case the Amended Counterclaim.  The following facts are alleged in the Amended Counterclaim.

According to Defendants, in May 2006, the parties began discussing the possibility of refinancing Bradley's existing loans with Simmons National Bank.  ECF No. 141, Pg. 2.  In discussing this possibility, Bradley alleges there was no discussion of capping advances on receivables for certain customers at 10% of the total outstanding accounts receivable balance if any one customer's accounts receivable exceeds 10% of Bradley total outstanding accounts receivable. This is commonly referred to and referred to herein as a "Concentration Cap".  ECF No. 141, Pg 2-3.

Prior to the execution of the loan documents, which were completed on October 30, 2006, Webster retained ARG Evaluation Group. ("ARG").   ARG prepared a report showing the top five customers of Bradley encompassed in excess of 65% of Bradley's business, with each such customer in excess of the 10% Concentration Cap. Defendants state that throughout this loan process, Webster failed to raise this Concentration Cap issue and did not limit initial funding of the loan based on the Concentration Cap even though the Credit Agreement contained a 10% Concentration Cap provision. ECF No. 141, Pgs. 3-6.

Additionally, according to Defendants, in February of 2007, a Webster prepared accounting examination report showed Bradley's accounts receivable remained "highly concentrated" with the top three debtors comprising 62.7% of the total accounts receivable.  However, Webster continued to fund these accounts as part of the allowable borrowing base.  ECF No, 141, Pgs. 6-7.

Defendants allege that in September 2007, Webster for the first time, raised the 10% Concentration Cap issue and refused funding loan amounts.  As a result of this action, Defendants state they were unable to secure the needed hardwood logs to meet the demand of customers.  This caused a forced liquidation of Bradley's business. ECF No. 141, Pgs. 8-10.  According to Defendants a course of dealing had developed between the parties whereby the strict terms of the Credit Agreement were regularly and continuously waived or ignored, specifically, compliance with the 10% Concentration Cap had been ignored repeatedly.  ECF No. 141, Pg. 9.

Defendants also allege that during the relevant time period Bradley and Chambers deposited funds into the Webster account relating to COBRA payments by employees of Bradley.  Defendants state that despite a demand for release of these funds, Webster has refused to release these funds and converted the funds to their own use.  ECF No. 141.

### A. Amended Counterclaims

As noted above, Defendants' Amended Counterclaim pleads causes of action based on (1) breach of contract; (2) violation of the Arkansas Deceptive Trade Practices Act; (3) fraud in the inducement; (4) conversion; (5) promissory estoppel; and (6) commercial unreasonableness.  ECF No. 141.  Plaintiff seeks a dismissal of these counterclaims pursuant to FED. R. CIV. P. 12(b)(6).  ECF No. 210.  In response, the Defendants argue that the Amended Counterclaim provides sufficient facts to properly state a claim for each of these causes of actions and the Amended Counterclaim fully complies with Federal Rule of Civil Procedure 8(a)(2).  ECF No. 215.

Having reviewed Defendant's Amended Counterclaim in this matter, this Court finds Defendants have properly pled sufficient facts to comply with Federal Rule of Civil Procedure 8(a)(2).  Notably, pursuant to Rule 8(a)(2), a party is required to include in the Complaint "a short and plain statement of the claim showing that the pleader is entitled to relief."  As interpreted by the United States Supreme Court, such a statement must also be "plausible on its face."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  This "plausibility" standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  However, Rule 8(a)(2) does not required "detailed factual allegations."  *Id.*  (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

Based on the factual allegations discussed above, Defendants specifically allege the following claims in the Amended Counterclaim:

> **Breach of Contract**
> 26. The actions of Webster as heretofore stated, constitute a breach of contract, which proximately caused BLC's damages to be determined at trial.

28. BLC fully complied with the terms of the Credit Agreement and the parties course of dealings at all times prior to Webster's breach of the agreement, or their performance was excused by Webster's conduct.

**Violation of Arkansas DTPA**

30. Webster's improper and wrongful manipulation of the terms and conditions of the parities' Credit Agreement, including their agreements concerning Syringa and Simmons, and their unreasonable and arbitrary application thereof, were unconscionable acts, which wrongfully benefitted Webster, at the expense of Counter-Plaintiffs, and are an affront to any sense of decency, reasonableness, or commercial standard.

31. Webster's actions and conduct constitute a violation of the Arkansas Deceptive Trade Practices Act, codified at Ark. Code. Ann. § 4-88-107(a)(10) (the "Act"), which prohibits any business pr person from engaging in any unconscionable, false, or deceptive acts in business, commerce, or trade.

33. Webster's actions were such that they knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in damages, and yet they continued their unreasonable and reckless conduct in reckless disregard of the consequences from which malice may be inferred and punitive damages should be awarded.

**Fraud in the Inducement**

35. The actions of Webster constitute fraud in the inducement, in that Webster's manipulative conduct, statements, nondisclosures, and false representations of material facts, which Webster and its representatives knew or believed were false, or knew or believed that they did not have sufficient basis or information to make said representations, were made or effected with the intent to induce the Counter-Plaintiffs to enter into the Credit Agreement, and any and all related loan documents, including but not limited to the Guaranty Agreement of October 30, 2006, fund additional capital, and mortgage related property, all in justifiable reliance upon such representations, conduct, manipulations and non-disclosures. The Counter-Plaintiffs justifiably relied upon Webster's false, misleading, and manipulative conduct, and as a result have sustained damages in an amount to be determined at trial.

**Conversion**

39. Webster exercised unauthorized dominion and control over the Counter-Plaintiffs property and bank accounts related to the Syringa funds and COBRA funds, causing substantial damages, to be determined at trial.

**Promissory Estoppel**

41. Pursuant to FED. R. CIV. P. 8(d) the Counter-Plaintiffs state alternatively that the conduct and statements of Webster, and its representatives, should have reasonably caused Webster to expect to induce action or inaction by Counter-Plaintiffs.

42. Webster's conduct and representation indeed induced such reliance by Counter-Plaintiffs, causing it to formulate business decisions based upon the conduct and representations of Webster, such as changing its primary finance source, and mortgaging related property.

43. Webster's conduct and representations are binding and enforceable as injustice can only be avoided by such enforcement.

**Commercial Unreasonableness**

45. Dr. Chambers continued to attempt to service Webster's loans even though BLC had been shut down. His efforts included attempts to market and sell the inventory and the payment of several hundred thousand dollars of Dr. Chambers' personal funds toward the indebtedness. During this time, Webster's representatives ordered BLC and Dr. Chambers to sell the inventory, even at a loss, and otherwise interfered with BLC's rights to sell its inventory in a commercially reasonable manner, by placing tags noting its security interest on inventory, and wrongfully accused Dr. Chambers of causing BLC inventory to be transferred to other entities, in an effort to avoid Webster's security interest, however, its own masters' report states otherwise. These actions caused significant emotional distress to Dr. Chambers and have caused significant damage to his reputation.[2]

Based upon Defendant's factual allegations, this Court finds the Defendants have met the required burden of stating a claim upon which relief can be granted in accordance Rule 8(a) and the holdings of *Iqbal* and *Twombly.* Accordingly, this Court finds Defendants have properly stated a claim for (1) breach of contract; (2) violation of the Arkansas Deceptive Trade Practices Act; (3)

---

[2] It appears that Defendants claim based on commercial unreasonableness is related to actions of Webster after Webster took possession of the Defendant's collateral. Webster concedes in their Motion that Defendant's Amended Counterclaim states facts sufficient to state a claim that Webster failed to liquidate the collateral in a commercially reasonable manner after they took possession of the collateral. ECF No. 222, Pg. 9. Accordingly, this Court finds Defendants have properly stated a claim based upon commercial unreasonableness in so far as it relates to actions of Webster after Webster took possession of the Defendant's collateral.

fraud in the inducement; (4) conversion; (5) promissory estoppel; and (6) commercial unreasonableness as set out in the Amended Counterclaim.

### B. Punitive Damages

According to Defendants Amended Counterclaim, Defendants seek an award of punitive damages against Webster. ECF No. 141, Pg. 17. Webster argues the claim for punitive damages should be dismissed because their conduct does not "meet the high bar for punitive damages." ECF No. 211, Pg. 37.

In the Amended Counterclaim on the claim for punitive damages, Defendants allege Webster's actions and conduct were intentional, willful, and in conscious disregard of the their rights. They request punitive damages as a punishment to deter others from like conduct. ECF No. 141, Pg. 17. Additionally, Defendants allege Webster's actions were unreasonable and reckless and in reckless disregard of the consequences from which malice may be inferred and punitive damages should be awarded as it relates to the claims based on (1) Violations of Arkansas DTPA, and (2) Fraud in the Inducement. ECF No. 141, Pgs. 13-15.

Based upon the factual allegations outlined above, this Court finds the Defendants have met the required burden of stating a claim upon which relief can be granted in accordance Rule 8(a) and the holdings of *Iqbal* and *Twombly.* Accordingly, this Court finds Defendants have properly stated a claim for punitive damages.

### 4. Conclusion:

Based on the forgoing, it is recommended that Plaintiff's Motion to Dismiss Amended Counterclaims and Defenses (ECF. No. 210) be **DENIED.**

The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.  *See  Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

**DATED** this **17th day of June, 2011.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE